1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EZEKIEL GUTIERREZ, an individual, | |
| Plaintiff, | Case No.: 14-CV-0131-BTM-JMA |
| vs. | |
| | **ORDER GRANTING** |
| SEA WORLD LLC, a Delaware | **DEFENDANT'S MOTION TO** |
| corporation, and DOES 1 through 25, | **COMPEL ARBITRATION** |
| Defendants. | |

Defendant Sea World LLC ("Defendant") has filed a motion to compel arbitration and stay court proceedings pending arbitration. For the reasons set forth herein, the Court GRANTS the motion.

## I.  BACKGROUND[1]

Plaintiff was employed by Sea World LLC as a Security Investigator from January 1998 through July 2012.  ¶¶ 3, 12.  On July 23, 2012, his employment was terminated.  ¶12.  On December 9, 2013, Ezekiel Gutierrez ("Plaintiff") filed this civil action in the Superior Court of the State of California, County of San Diego, Case No. 37-2013-00079100-CU-OE-CTL.  The case was removed to this Court on January 17, 2014, and Sea World LLC filed the motion *sub judice* one week

---

[1] Unless otherwise noted, all facts herein are taken from the Complaint and all "¶" citations are references to paragraphs of the Complaint.

thereafter.   Plaintiff asserts the following claims: (1) wrongful termination (Cal. Gov't. Code §§ 12490(a), §135); (Cal. Labor Code  §§ 132(a), § 6400 *et seq*., 6401 *et seq*., 6401.7 *et seq*.); (2) discrimination on basis of physical disability (Cal. Gov't. Code § 12490(a)); (3) failure to accommodate (Cal. Gov't. Code § 12490(m)); (4) failure to engage in the interactive process (Cal. Gov't. Code § 12490(n)); (5) negligent supervision; (6) intentional infliction of emotional distress; and (7) injunctive relief.

Upon hiring, Plaintiff received a copy of the Company's Team Member Handbook ("Employee Handbook") among other preemployment documents. (Decl. of Ezekiel Gutierrez ¶3.)  On April 24, 2007, Plaintiff signed an acknowledgement, affirming that he had received a copy of the Employee Handbook.  (Def's Ex. E.)  Prior to 2009 and since 1997, Defendant had participated in a dispute resolution program which had been administered by Anheuser-Busch Companies, the then parent corporation of Defendant.  (Decl. of Anne Dill ¶¶4-6, Ex. A.)  In late 2009, Defendant revised its program, notified its employees of the new dispute resolution program ("DRP") by mail, and made the new forms available in Defendant's Human Resources department.  (Id. ¶7, Ex. C.) The DRP includes three procedural levels, culminating in final, binding arbitration. (Id.)  The DRP Policy states:

> The DRP applies to all employees of SeaWorld Parks & Entertainment, Inc. and/or any of its subsidiaries, divisions or affiliated companies ("Employees").
> . . .
> While Employees may submit any employment-related dispute at Level 1, only covered claims will be accepted and processed at Levels 2 and 3. Covered claims are claims relating to or arising out of the employment relationship that:
> A. the Company may have against an Employee . . . .
> B. the Employee may have against the Company . . . where the Employee alleges unlawful termination and/or unlawful or illegal conduct on the part of the company including… claims relating to involuntary terminations . . .

employment discrimination . . . retaliation . . . accommodation . . . tort claims . . . claims for violation of public policy.

(Def's Ex. C at 6.)

Defendant's letter to its employees included the following language:

The program will continue to have all of the same provisions and benefits as before and will continue to be the exclusive method of addressing any of your employment-related disputes that cannot be resolved informally with your supervisor, Human Resources or other managers . . . .

As a SeaWorld Parks and Entertainment, Inc. employee, the DRP constitutes a binding legal agreement between you and the company, so please read the new procedure materials carefully. Your continued employment with the company means both you and the company have agreed to the terms and conditions of the SeaWorld Parks and Entertainment, Inc. Dispute Resolution Program, and that the DRP will be the sole means for resolving covered claims.

(Def's Ex. B.)

On November 19, 2012, after his termination, Plaintiff submitted a Level 1 claim to the DRP, alleging unlawful termination and retaliation. (Def's Ex. G.) On the Level 1 DRP claim form, Plaintiff signed and acknowledged the following:

I submit the above dispute to the SeaWorld Parks & Entertainment Dispute Resolution Program ("DRP") for resolution. I acknowledge and agree that if any covered claim is not resolved at Levels 1 or 2 and if I wish to pursue the matter further, I must request arbitration for resolution of such claim, and that the arbitration will be final and binding on both me and the Company.

(Def.'s Ex. G.)

Upon Level 1 local management review, Plaintiff's employment was not reinstated. He thereafter submitted a Level 2 nonbinding mediation claim to the DRP. (Def's Ex. I.) On the Level 2 DRP claim form, Plaintiff also signed and acknowledged the following:

I further understand that if the dispute is not resolved during mediation and I wish to pursue this matter further, I must submit this dispute to arbitration under the DRP for a determination that will be binding on both me and the Company.

(Id.)

- 3 -

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1748 (2011).  The FAA's purpose is to "ensur[e] that private arbitration agreements are enforced." Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1159 (9th Cir. 2013).  Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. Mission Viejo Emergency Med. Associates v. Beta Healthcare Grp., 197 Cal. App. 4th 1146, 1153 (2011). Although public policy favors arbitration, courts will not compel arbitration where it was not agreed to. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); Kemper v. Schardt, 143 Cal. App. 3d 557, 559 (1983).  Agreement, therefore, is a statutory prerequisite to the validation of an arbitration provision, and the movant must prove the existence of such agreement by a preponderance of the evidence. See Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996).  In California, an arbitration agreement may be either express or implied in fact. Pinnacle Museum Tower Ass'n v. Pinnacle Mktg. Dev. (U.S.) LLC, 55 Cal. 4th 223, 236 (2012).

## III.  DISCUSSION

Defendant moves to compel arbitration pursuant to the DRP.  Plaintiff opposes the motion, arguing (a) that no agreement was made to bind Plaintiff to the

1    DRP, and (b) that the DRP is unconscionable, rendering the arbitration agreement

2    unenforceable.

3        **A.    Plaintiff is Bound by the Dispute Resolution Policy**

4        The Court's task is to determine whether the parties have each agreed to

5    submit that dispute to arbitration.  <u>Monzon v. S. Wine & Spirits of California</u>, 834

6    F. Supp. 2d 934, 940 (N.D. Cal. 2011).  The cover page of the DRP describes it as

7    a "policy [that] constitutes a binding agreement between [the employee] and the

8    company for the resolution of employment disputes[.]" (Def's Ex. C at 2.)

9    Defendant argues that Plaintiff agreed to be bound by the DRP by signing and

10   acknowledging Plaintiff's receipt of the Employee Handbook.  The

11   acknowledgement states, in relevant part:

12       I acknowledge that I have received a copy of the Company's Team Member
         Handbook, which contains information on the Company's general personnel
13       policies and on my privileges, benefits and obligations as a team member.

14   (Def.'s Ex. E.)

15       Plaintiff does not dispute that he received and read the Employee Handbook

16   containing the DRP materials.  The Employee Handbook established the policies,

17   privileges, benefits and obligations of Plaintiff's employment, including the policy

18   that certain disputes would be arbitrated.  Particularly, the DRP provided notice

19   that accepting employment at Sea World would subject Plaintiff to the binding

20   DRP process.  Article 17 of the DRP states:

21       By accepting or continuing employment with the Company, new and current
         Employees agree, as a condition of their employment, that all covered claims
22       are subject to the DRP process, and that an Arbitrator's award shall be a
23       final, binding, and exclusive determination of their covered claims.

24   (Def.'s Ex. C at 18.)

25       By accepting employment after reading the Employee Handbook, Plaintiff

26   agreed to arbitrate all claims covered by the DRP.  <u>See</u> <u>Davis v. Nordstrom, Inc.</u>,

27   ___ F.3d ___, 2014 WL 2808139 (9th Cir. June 23, 2014) (finding a binding

28

agreement to arbitrate where an employee accepted employment based upon terms within an employee handbook).  Furthermore, Plaintiff does not dispute that he received a letter dated December 18, 2009 which informed him of the revised DRP policy.  Plaintiff remained employed by Defendant for almost three years thereafter, without objection, indicating assent to the DRP policy.  See id. ("Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions.")

Plaintiff claims that "[he] never understood that arbitration was the exclusive process to resolve his claims[.]"  (Opp'n at 3.)  Even if that is so, Plaintiff remains bound by the DRP because a mere misunderstanding or a failure to read the contract does not excuse a party from its terms.  Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.");  see also Bauer v. Jackson, 15 Cal. App. 3d 358 (1971) ("When a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it.").

Finally, Plaintiff's submission of Level 1 and Level 2 claims to the DRP exhibits his assent to the arbitration provision.  Plaintiff's invocation of the DRP included, on clear and unmistakable terms, an acknowledgment by Plaintiff that he was subject to "arbitration [that] will be final and binding[.]"  The signature on the Level 1 and Level 2 DRP claim forms indicate Plaintiff's awareness, understanding and agreement to be bound by the DRP.

Based on the above, the Court finds that an agreement to arbitrate existed between the parties.  The Court further finds that the causes of action asserted are covered by the arbitration agreement because they relate to an involuntary termination "alleged to be discriminatory or otherwise unlawful . . . ."  See Def.'s

Exs. A & C at 6 (Doc. 5-1) (enumerating DRP covered claims and excluded claims).  The DRP is therefore enforceable with respect to Plaintiff's claims unless it is unconscionable.

### B.   <u>Unconscionability</u>

"Under California law, courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.'"  <u>AT&T Mobility</u>, 131 S. Ct. at 1746.  An arbitration agreement is unenforceable if it is procedurally and substantively unconscionable. <u>See</u> <u>Davis v. O'Melveny & Myers</u>, 485 F.3d 1066, 1072 (9th Cir. 2007).  Courts use a sliding scale approach: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  <u>Id.</u> at 1072.  <u>See also</u> <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 114 (2000).

1. *Procedural Unconscionability*

Plaintiff argues that the DRP is a contract of adhesion that is procedurally unconscionable.  Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 922 (9th Cir. 2013).   For oppression to be present, there must be an inequality of bargaining power that results in no real negotiation and "an absence of meaningful choice."  <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486 (1982).  "An adhesion contract is a standardized contract which is imposed on a party of weaker bargaining strength on a take-it or leave-it basis."  <u>Ontiveros v. DHL Express (USA), Inc.</u>, 164 Cal.App.4th 494, 502 (2008).  <u>See also</u> <u>Antonelli v. Finish Line, Inc.</u>, No. 11-cv-03874, 2012 WL 525538 (N.D. Cal. 2012) (finding an arbitration agreement to be procedurally unconscionable, noting, *inter alia*, that there is an

element of surprise where an employee had "no reasonable opportunity to read or review the DRP.").

Plaintiff contends that the Defendant drafted the DRP in its entirety, that the DRP was presented to him on a "take it or leave it" basis and that signing the acknowledgement form was a condition of his employment.  These circumstances provided Plaintiff neither bargaining power nor the opportunity to negotiate the terms of his employment.  Plaintiff also alleges that the arbitration provision was not explained to Plaintiff in detail, but regardless, Plaintiff was not in the economic position to decline employment on the basis of such a provision.  Plaintiff was also never given the opportunity to opt out.  These assertions evidence a high degree of procedural unconscionability concerning the negotiation of and assent to the DRP under California Law.  See O'Melveny & Myers, 485 F.3d at 1075 (holding that where an employee is facing an employer with overwhelming bargaining power that has drafted an arbitration clause, and presented it to the employee on a take-it-or-leave-it basis, the clause is procedurally unconscionable); Martinez v. Master Prot. Corp., 118 Cal. App. 4th 107, 114 (2004) ("An arbitration agreement that is an essential part of a "take it or leave it" employment condition, without more, is procedurally unconscionable."); Aral v. EarthLink, Inc., 134 Cal.App. 4th 544, 557 (2005) (stating that there is "quintessential procedural unconscionability" where an arbitration agreement is presented on a take-it-or-leave-it basis with no opportunity to opt out); Kanbar v. O'Melveny & Myers, 849 F. Supp. 2d 902, 909 (N.D. Cal. 2011).  The Court accordingly finds that the DRP was procedurally unconscionable under the circumstances.

### 2. *Substantive Unconscionability*

A provision is substantively unconscionable if it involves terms that are "so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1322 (2005) (citations omitted).  Substantively unconscionable terms may take various forms,

but may generally be described as unfairly one-sided.  Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003).  To be valid, at minimum the arbitration agreement must require a neutral arbitrator, adequate discovery, and a written decision sufficient to allow judicial review.  Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1248 (2011).  Plaintiff argues that the DRP is substantively unconscionable because it restricts discovery by limiting depositions to expert witnesses and two other individuals.  However, the DRP explicitly provides that "The Arbitrator may grant, upon good cause shown, either party's request for additional or alternative discovery . . . ." (Def's Ex. C at 15.)  Plaintiff does not show that more discovery than the DRP provides for is necessary in these circumstances.  If additional discovery is required, showing "good cause" is not a shocking or oppressive threshold.  Thus, the DRP does not unfairly restrict Plaintiff's right to discovery.

Plaintiff also argues that the DRP is substantively unconscionable because it covers claims that are more likely to be brought by an employee, rather than those of the employer, resulting in an unfair one-sidedness.  In evaluating such a claim of unfair one-sidedness, the Court considers whether a "modicum of bilaterality" was present in the arbitration agreement.  See Armendariz, 24 Cal. 4th at 117 (2000).  Where the agreement requires one party, but not the other, to arbitrate all claims arising from the same event or transaction, mutuality is lacking.  Id. at 120.  The Court also considers whether the agreement exempts claims more likely to be brought by the stronger party while requiring arbitration of claims most likely to be brought by the weaker party.  See Fitz v. NCR Corp. 118 Cal. App. 4th 702, 724 (2004); Sheikh v. Cisco Sys., 2009 U.S. Dist. LEXIS 32161, *14 (N.D. Cal. Mar. 31, 2009).

The DRP's language makes clear that both the employer and the employee's claims arising from or related to the employment relationship would be subject to the DRP in the same capacity.  (Def's Ex. C at 6.)  The excluded categories include, e.g., intellectual property claims, ERISA claims, worker's compensation

claims, and claims objecting to the company's policies and procedures (except those alleging discriminatory application of such policies). (See Def.'s Ex. A at 6.) Only the intellectual property claims are claims likely to be brought by the employer. The other excluded claims are more likely to be brought by an employee. Even assuming the exclusion relating to intellectual property is unjustifiably one-sided and therefore substantively unconscionable, no claims at issue here fall under that exclusion. Therefore, the offending provision of the agreement may be severable. See Sheikh v. Cisco Sys., 2009 U.S. Dist. LEXIS 32161 at *16-17. The Court finds that any unconscionable exclusion here is severable for the same reasons expressed in Sheikh, i.e., because it does not evidence a systematic effort to impose an inferior forum on employees, and because no other offending terms have been identified in the agreement. Absent the potentially offensive, severable exclusion, the Court concludes that the agreement is not unfairly one sided.

Defendant has satisfied its burden of showing that Plaintiff assented to arbitration of the types of claims asserted here, i.e., those arising from or related to his employment and alleging unlawful termination. (See Def.'s Exs. A & C at 6 (Doc. 5-1).) Although Plaintiff's assent came under procedurally unconscionable circumstances, Plaintiff has not shown the DRP to be substantively unconscionable as applied here.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's motion to compel arbitration and stay proceedings is **GRANTED**. Plaintiff shall arbitrate his claims pursuant to the terms of the DRP. The Court stays this case until April 1, 2015. The parties shall forthwith initiate further proceedings under the DRP. Delays without good cause by the Plaintiff will result in dismissal of this case. Delays without good cause by Defendant will be deemed a waiver of further proceedings under the DRP.

The Court will hold a status conference on April 2, 2015 at 10:00 a.m. in Courtroom 15B.  Either party may seek sanctions at any time prior to the status conference based on delay without good cause.

**IT IS SO ORDERED.**

DATED:  September 26, 2014

Barry Ted Moskowitz, Chief Judge
United States District Court